WHEELER, Administrator, etc. vs. SINGLE.

*February 3 — March 3, 1885.*

*Estates of decedents — Fraudulent conveyances — Restoring mutilated deed — Cloud upon title — Evidence — Presumption as to delivery.*

1. Under sec. 3832, R. S., when there is a deficiency of assets, an administrator may bring an action to cancel and remove from the records conveyances made in fraud of the creditors of his intestate, and to restore altered or mutilated deeds and the record thereof.
2. In the absence of evidence there is a legal presumption that a deed was delivered at the date of its execution.
3. Upon the evidence in this case (stated in the opinion) it is held that a certain conveyance by plaintiff's intestate was not made with fraudulent intent, and that a certain deed was delivered before erasures therein were made.
4. The erasure, after delivery, from a deed and the record thereof, of the description of a part of the lands covered thereby, does not divest the title of the grantee, and subsequent voluntary conveyances of such land by the grantor may be annulled for the purpose of restoring the mutilated deed and record and subjecting the land to the payment of claims against the estate of the grantee therein.

Wheeler, Adm'r, vs. Single.

APPEAL from the Circuit Court for *Marathon* County.

This action was commenced in 1883 by the plaintiff, as administrator of the estate of Charles A. Single, late of the county of Marathon, who died in 1880, against the widow of the intestate. It was brought by direction of the county court, pursuant to sec. 3832, R. S., the assets of the estate in the hands of the plaintiff being insufficient to pay the claims allowed against the estate. The objects of the action are (1) to set aside a conveyance of real estate executed by the intestate to his brother, and certain mesne conveyances executed by the brother and his grantees, under which the title to such real estate appears to be in the defendant; and (2) to restore a deed of certain other lands executed by such brother to the intestate, and the record thereof, both of which are alleged to have been mutilated after delivery of the deed. Two causes of action are stated in the complaint. The first relates to lot 4, in block 11, in the city of Wausau, and the other to lots 6, 7, 8, and 9, in Single's addition to that city.

The facts, as they appear from the pleadings, proofs, and findings of the court, are as follows:

In the year 1857 the plaintiff's intestate, Charles A. Single, and his wife, the defendant, executed to James Single a conveyance, with warranty, of all the real estate owned by the intestate, all of which was in Marathon county. This conveyance included all of the above lots. At the same time, James Single executed to Charles a mortgage on the same real estate, to secure the payment of $20,000. These instruments were properly executed and duly delivered, and soon after execution were recorded in the proper register's office. James paid no other consideration for the conveyance, and never entered into possession of any of the property. At that time Charles was indebted to divers persons. A particular statement of such indebtedness will be found in the opinion.

In 1867, James Single and wife conveyed lot 4, in block 11, to Benjamin T. Single, a son of the intestate and defendant; and in 1870, Benjamin conveyed the same lot to the defendant; also, in 1867, James and wife executed a conveyance to two daughters of Charles A. and the defendant,— Josephine and Alice Single,— of lots 6, 7, 8, and 9, before mentioned; and the daughters conveyed the same lots to their mother, the defendant, in 1871.

In 1859, James Single and wife executed to Charles A., the intestate, a conveyance of lots 6, 7, 8, and 9, with two other parcels, which are included in the deed of 1857 to James; and the same was duly recorded. Subsequently, the descriptions of the above lots in the deed were erased, and the same descriptions were obliterated from the record, but by whom, or at what particular time, does not appear. Neither does it appear when this deed was delivered to the intestate; but it was found with his papers after his decease.

The remaining parcels of land, so conveyed to James Single in 1857, were by him conveyed to the defendant in 1859. Some of the above mesne conveyances were imperfectly executed. Charles A. Single remained in the possession of all the lands conveyed to James in 1857 until his death, and had full control of them. They were assessed to him, and he paid the taxes. He made improvements upon them; even executed conveyances of some of them; and directed the making of the conveyances above mentioned. It does not appear that anything was ever done with the $20,000 mortgage.

After the death of Charles A. Single, claims against his estate were duly allowed to the amount of over $4,000. All of such indebtedness accrued after the fall of 1870.

The circuit court found the above facts substantially; and in addition thereto, found that the conveyance of 1857 to James Single, although voluntary, was made in good faith, and without any intent to hinder, delay, or defraud either

existing or subsequent creditors of the intestate; also, that the alteration and mutilation of the deed of 1859, and the record thereof, occurred before the deed was delivered to the intestate. Thereupon the court gave judgment dismissing the complaint, with costs. The plaintiff appeals from such judgment.

For the appellant there were briefs by *Neal Brown* and *C. V. Bardeen*, and oral argument by *Mr. Brown*.

For the respondent there was a brief by *Pullings, James & Holway & H. H. Hoyt*, and oral argument by *Mr. Hoyt*. To the point that the administrator could not maintain an action for the second cause stated in the complaint, it being merely to remove a cloud upon the title of his intestate, they cited *Marsh v. Supervisors*, 38 Wis. 250; *Magee v. Supervisors*, id. 247; Gary's Prob. Law, sec. 331; R. S. sec. 3835; *Cornell v. Radway*, 22 Wis. 260.

LYON, J. The first cause of action stated in the complaint is to cancel and remove from the records certain conveyances, which are alleged to have been executed in fraud of the creditors of the plaintiff's intestate; and the second is to restore an altered or mutilated deed, and the record thereof. Undoubtedly, these are proper subjects of equitable cognizance, the *gravamen* of both being alleged frauds, and to remove clouds upon title to land. Sec. 3832, R. S., fairly construed, confers upon the administrator power to bring this action.

The controlling questions to be determined on this appeal are: (1) Was the deed of 1857, executed by the intestate and his wife (the defendant) to James Single, made in good faith, and without any intent to hinder, delay, or defraud the creditors of the intestate? and (2) Was the deed of 1859, executed by James Single and wife to the intestate, and the record thereof, altered or mutilated before the same was delivered to the intestate? If both these questions are an-

swered in the affirmative, it necessarily results that the plaintiff has failed to establish either cause of action. If either of them be answered in the negative, the plaintiff is entitled to some relief. The circuit court determined both of them in the affirmative, and gave judgment for the defendant. If such findings are correct, so also is the judgment; otherwise, not.

1. Is the deed of 1857 a valid conveyance to James Single of the lands therein described, as against the creditors of the estate of the plaintiff's intestate? The only evidence of the indebtedness of the intestate before the fall of 1870 is contained in three judgments against him. One of these was in favor of one Morrison, for less than $400, rendered in the circuit court March 6, 1856. The record shows that an execution was issued on the judgment in July of the same year, and that the judgment has been satisfied and discharged; but it fails to show when the same was paid. There is no evidence that it was unpaid in 1857. The presumption is that it was paid before the deed of that year was executed. The second judgment was obtained, in 1858, by one Schafer, against the intestate, one Uline and one Hobart, and was for about $1,600. Hobart testified on the trial that this judgment was obtained on a promissory note made by the intestate and Uline to him, and by him indorsed to Schafer; and he thinks the indebtedness accrued in 1856. One year after it was rendered, $656 was paid on it, and in 1869 it was satisfied in full. It does not appear by whom these payments were made, but Hobart testifies that no part of such payments was made by him. The third judgment was in favor of Little & Baker, against the intestate; was obtained in 1860; and was for a little less than $500. The only proof of it was a transcript from Portage county, filed in the Marathon county circuit court. It does not appear whether this judgment has ever been paid or not, or that any proceedings were ever had to enforce its collection, or

that it is one of the claims allowed against the estate of the intestate. The statute of limitations had run against it before the death of the intestate. There is no legal presumption that this judgment was unpaid in 1870, or that the debt upon which it was founded was contracted before the execution of the deed of 1857.

It will be observed from the foregoing statement that the only debt proved to have been owing by the intestate, at the time when the deed of 1857 was executed, was the Hobart note, upon which Schafer obtained his judgment. There are many circumstances in the case which satisfy our minds that the deed of 1857 was not executed for the purpose of hindering, delaying, or defrauding the parties interested in that judgment. The $20,000 mortgage, executed by James Single to the intestate, was of record. There is no claim that the intestate ever disposed of it or sought to conceal its existence. The mortgage interest was just as accessible to the creditor as the land would have been had it not been conveyed to James. Moreover, Hobart, who stood in the relation of surety to the intestate for the payment of that judgment, testified that in 1859 he examined the records with reference to enforcing the collection of the balance of it, and he there saw the deed of 1859 from James to the intestate, and the record thereof; and that both were then unmutilated, and both included lots 6, 7, 8, and 9, above mentioned. At that time there was nothing to prevent the issuing of an execution upon the judgment, and a sale of those lots to satisfy the same. This was not done; and the failure to do so raises a strong presumption that some arrangement was then made for the future payment of the balance of the judgment. But the most important fact tending to rebut any fraudulent intent in the execution of the deed of 1857 is that the judgment was afterwards fully paid and satisfied.

In view of the above facts, we are satisfied that the con-

veyance of 1857 was not made with intent to defraud any then existing creditor of the intestate. We are also satisfied that it was not made with intent to defraud any creditor whose demand has been allowed against the estate of the intestate. There is no evidence that the latter contracted any indebtedness between 1860 and 1870; and it is not satisfactorily proved that he owed anything when the claims allowed against his estate commenced to accrue. Under these circumstances, we think the circuit court held correctly that the deed of 1857 was not executed with any fraudulent intent. This disposes of the first cause of action in the complaint, affecting lot 4, in block 11, adversely to the plaintiff.

2. The remaining question is, Was the deed of 1859, from James Single and wife to the intestate, delivered to him after the descriptions of lots 6, 7, 8, and 9, were erased therefrom? If it was, those lots did not pass by the deed, but the title thereto remained in James Single. If it was delivered before the erasure, the title did pass to the intestate, and the subsequent erasure did not divest it.

There is no direct testimony as to when the deed was delivered. The fact that the intestate controlled the property after the execution of the deed of 1857, and that conveyances thereof by James were made under his direction, renders it highly probable that he directed the execution of the deed of 1859. If so, the presumption is very strong that the latter deed was delivered when executed. We find no testimony in the record which tends to raise a contrary presumption. But, were there no testimony bearing upon the question, the legal presumption undoubtedly is that the deed was delivered at the date of its execution. This presumption, supported as it- is by the testimony above mentioned, must be applied in this case. It must be held, therefore, that the title to lots 6, 7, 8, and 9 passed to the intestate by the deed of 1859. Certainly it was not divested by the erasure. *Wilke v. Wilke*, 28 Wis. 296; *Hilmert v. Christian*, 29 Wis. 104; *Rogers v. Rogers*, 53 Wis. 36.

All of the conveyances through which the defendant claims title to the lots last above mentioned are purely voluntary. No grantee in any of them paid any consideration for his conveyance. Hence there is nothing in the way of annulling such conveyances and restoring the mutilated deed and record, so that the title to the lots may be shown to have been in the intestate at the time of his decease, to the end that the same may be made available for the payment of claims allowed against his estate.

The judgment of the circuit court must be reversed; and the cause will be remanded, with directions to render judgment for the plaintiff in accordance with this opinion.

*By the Court.*— Ordered accordingly. ·