WILLIAM S. DONNAN, Appellee, vs. CHARLES L. DONNAN
et al. Appellants.

Opinion filed October 26, 1908—Rehearing denied Dec. 2, 1908.

1. EVIDENCE—disqualification of wife as respects conversations of husband. Under section 5 of the Evidence act, and its proviso, a wife is not competent, either during or after coverture, to testify to any conversation between herself and her husband, or to any admission made by him to her, or to any conversation between him and a third person, or to any admissions made by him to a third person, except in causes between husband and wife. (Goelz v. Goelz, 157 Ill. 33, followed; Deniston v. Hoagland 67 id. 265, and Galbraith v. McLain, 84 id. 379, explained.)

2. SAME—when wife is an incompetent witness in will contest case. In a proceeding by a son to contest his father's will for alleged want of mental capacity and for alleged undue influence by another son, the widow is incompetent to testify that in her judgment the testator was incapable of transacting ordinary business, such judgment being based largely upon conversations between herself and the testator or between him and third persons.

3. WILLS—inequality of distribution cannot, of itself, be considered as evidence of unsound mind or undue influence. Inequality in the distribution of property by the will cannot, of itself, be considered as evidence tending to show unsoundness of the testator's mind or undue influence; but if other facts and circumstances are proven tending to show such conditions, then the inequality of distribution may be considered in connection with the other evidence. (England v. Fawbush, 204 Ill. 384, distinguished.)

4. SAME—the inequality of distribution raises no presumption against validity of will. It is the right of a person to dispose of his property as he sees fit, to the exclusion of some or all of his children, and inequality in the distribution of the testator's property among his children raises no presumption against the validity of the will, nor, standing alone, is it to be considered as a circumstance against the validity of the will.

5. SAME—child has no legal or natural right to father's estate. A child has no legal or natural right to its father's estate as against the provisions of a valid will, and a parent free from undue influence and of sufficient mental capacity may give his property to any one he may choose; nor does the fact that one child, as the result of his parent's unreasonable dislike or prejudice, receives less than the others, afford ground for setting aside the will, if the parent was of sound mind and free from undue influence.

APPEAL, from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding. ·

ROBERT HUMPHREY, (WILLIAM R. BALDWIN, guardian *ad litem*,) for appellants.

F. L. TOMLINSON, and BEACH, HODNETT & TRAPP, for appellee.

Per CURIAM : This bill was filed by appellee to contest the will of his father, Alexander Donnan. The will was executed May 5, 1904, and the testator died February 20, 1906. He was between seventy and eighty years of age at the time he executed the will. He left surviving him a widow, Sarah A. Donnan, and appellee, William S. Donnan, and appellants, Charles L. and Edward Donnan, as his only children and heirs-at-law. The testator was the owner of three hundred and sixty acres of land in Logan county, Illinois, worth, according to the proof, from $50,000 to $60,000. It was subject to a mortgage of $10,000. By his will he gave to his widow one hundred and twenty acres of land during her life, with remainder in fee to his sons Charles and Edward. Another forty acres was directed to be sold and the proceeds applied to the payment of the testator's debts, and the remainder of his land he gave to his sons Charles and Edward during their lives with remainder in fee to the heirs of their bodies. He gave his son William $50, and stated in the will as a reason for giving him no more of his estate, that he had theretofore made gifts to said son that would amount, in the aggregate, to a sum equal in value to the portion given each of the other sons. Appellee was the oldest son, was unmarried, and lived with his father twenty-four years after attaining his majority. The other two sons, on attaining their majority, married and established homes for themselves. In 1902 Alexander Donnan married a second wife, and about this time the appellee left

his father's house and went to reside with George Gibson, whose wife, Molly, had been raised by Alexander Donnan from infancy. After leaving home the appellee asked that his father compensate him for his labors during the time he resided with and worked for his father after attaining his majority. The father and son chose arbitrators to determine what was the proper amount appellee should be paid by his father. They agreed upon the sum of $4800, being at the rate of $200 per year for the twenty-four years appellee lived with and worked for his father after becoming of age. Subsequently this was paid before the will was executed. The bill charged that Alexander Donnan was mentally incapable of making a will, and that Charles L. Donnan and others to complainant unknown, by falsehoods and misrepresentation and fraudulent practices, unduly influenced the testator to make the will and deprive appellee of any part or share in his estate. The cause was tried by a jury and a verdict returned finding that the will was not the will of Alexander Donnan, and a decree was entered in accordance with the finding of the jury, from which decree this appeal is prosecuted.

The errors relied on are that the verdict of the jury and the decree of the court are contrary to the weight of the evidence; that the court improperly permitted Sarah A. Donnan, the widow of the testator, called as a witness by the appellee, (complainant below,) to testify on the trial; and that the court erred in giving instruction No. 14 on behalf of appellee and refusing instructions 2 and 5 asked for by the appellants.

Having reached the conclusion that the decree must be reversed for errors committed in giving and refusing instructions and in admitting testimony, we shall not discuss the merits of the case or the weight of the evidence.

Testator's widow was a party defendant to the bill and was called as a witness by complainant, appellee here. Appellants objected to her being permitted to testify on the

ground that she was not a competent witness, but their objection was overruled and the witness was permitted to testify. The substance of the material testimony given by Mrs. Donnan related to the mental and physical condition of the testator at the time of the execution of the will and to the frequent visits made to him by Charles L. Donnan prior to the making of the will. She testified that Charles L., during the fall of 1903 and the spring of 1904, visited the testator often. Part of the time he visited him several times a week and some of the time twice a day. Sometimes there would be a week between his visits. The witness testified that some of the conversations between the testator and his son Charles occurred in the testator's bed-room while the parties were alone and were not heard by her. On one occasion she says Charles told her he wanted to see his father privately, and closed the door between the room they were in and the one occupied by the witness; that she heard Charles speaking to his father in the fall of 1902 and 1903 about making a will, and that in January and February, 1903, she heard Charles tell his father to make a will and not give appellee any real estate; that appellee had received all that belonged to him; that his wages was all that he was entitled to; that Charles also told his father not to mention Molly Gibson in his will; that she heard Charles say these things to his father three times. The witness further testified that on the morning of the day the will was made Charles Donnan came to the testator's house in his own conveyance and asked testator to go with him, which he did. The proof shows that they drove to Lincoln, fifteen miles from the testator's home, where the will was drawn by a lawyer and executed by Alexander Donnan.

We are satisfied that Mrs. Donnan was not competent to testify pertaining to the matters in reference to which she gave evidence. Section 1 of the statute on evidence and depositions removes the common law incompetency resulting from any interest which a witness has in the proceeding.

The succeeding section creates certain exceptions to the first section. Mrs. Donnan's testimony, as appears from this record, was adverse to her own interest. Irrespective of the question of interest, however, the incompetency of the wife, under the common law, to testify to communications and conversations with her husband or between him and third persons, whether the evidence was offered either during or after the coverture, was based on grounds of public policy. This was recognized by section 5 of the act on evidence and depositions, which provided that no husband or wife should, by virtue of section 1 of the act, be rendered competent to testify for or against the other as to any conversation of the other occurring during the marriage, whether called as a witness during the existence of the marriage or after its dissolution, except in certain cases. The portion of section 5 which precedes the proviso, as it now appears, was originally enacted in 1867 and re-enacted in 1872. In 1874 the proviso was added, and that proviso reads as follows: "*Provided,* that nothing in this section contained shall be construed to authorize or permit any such husband or wife to testify to any admissions or conversations of the other, whether made by him to her or by her to him, or by either to third persons, except in suits or causes between such husband and wife."

In *Goelz* v. *Goelz,* 157 Ill. 33, it was said of the proviso that it was a recognition and a re-enactment of the rule of the common law based on public policy but confining its operations to cases other than suits between husband and wife. If this proviso be a recognition of the common law and a re-enactment thereof, it is apparent from the entire section that the wife is not competent, either during or after coverture, to testify to any conversation between herself and her husband or to any admission made by him to her or to any conversation between him and a third person, or to any admission made by him to a third person, except in suits or causes between the husband and wife. The only cases in

this State to which our attention has been called that seem inconsistent with this conclusion are *Deniston* v. *Hoagland,* 67 Ill. 265, and *Galbraith* v. *McLain,* 84 id. 379, and they lack controlling force for the reasons stated in the *Goelz case.* This witness' statement that in her judgment the testator was not capable of transacting ordinary business was based largely on conversations between herself and the testator or between the testator and others, and was incompetent.

Our conclusion is that the court should not have admitted the testimony of Sarah A. Donnan in reference to what was said when Charles was talking with his father, and should not have admitted her testimony in reference to the mental condition of the testator. In other respects her testimony, so far as the same has been called to our attention, was properly admitted.

At appellee's request the court gave the jury the following instruction:

"The court instructs the jury that inequality and unreasonableness in a testamentary disposition of property, though not, in itself, conclusive evidence of unsoundness of mind or of undue influence, may be considered as a circumstance tending to show unsoundness of mind or undue influence in connection with all the other facts and circumstances proven in the case; and the jury have a right to consider the evidence, if any, of unsoundness of mind and undue influence appearing in the will itself, taking into consideration the state of the testator's property, his relatives and the claims of the particular individuals thereof upon his bounty, in determining whether or not, at the time of the signing of the supposed will in question, the testator was of sound mind and memory and free from undue influence."

This instruction, standing alone, was calculated to make the impression on the jury that where it appears from the will that the testator has made an unequal distribution of his property among his children, this fact, alone, is to

be considered as evidence tending to show unsoundness of mind or undue influence. We have repeatedly held that inequality in the distribution of property may, in connection with other facts and circumstances proven, be considered upon the question of the soundness of mind of the testator or whether he was unduly influenced to make the will; but it has never been held, we believe, that the unequal distribution of property by a testator was primarily or of itself alone to be considered as evidence tending to prove unsoundness of mind or undue influence. Where other facts and circumstances are proven tending to show such condition of mind at the time the will was made, then inequality may be considered also, in connection with such facts and circumstances proven. No presumption is raised against the validity of a will because of inequality in the distribution of property, nor, standing alone, is it to be considered as a circumstance against the validity of the will. The law is too well settled to require the citation of authority, that the owner of property may dispose of it by will in any manner he sees fit, to the exclusion of some or all of his children, and the justice or propriety of the disposition made of the property is not a question for courts and juries to pass upon, but, as we have said, it is only when other facts and circumstances are proven tending to show lack of mental capacity or undue influence that inequality in the provisions of the will becomes a circumstance to be considered. The instruction here complained of was calculated to give the jury to understand that while "inequality and unreasonableness in a testamentary disposition of property" is not conclusive, it is evidence of unsoundness of mind or undue influence to be considered by the jury. The vice of the instruction is that it conveys the impression to a jury that it should consider "inequality and unreasonableness in a testamentary disposition of property" primarily as evidence of unsound mind or undue influence. It unduly emphasized "inequality and unreasonableness" as elements to be consid-

ered in determining the validity of the will, and was calculated to encourage the natural tendency to correct inequalities where they were believed to exist. In this respect it was entirely different from the instruction approved in *England* v. *Fawbush,* 204 Ill. 384. That instruction told the jury, among other things, that inequality in the distribution of property by will among those who would inherit if no will had been made, was not, of itself, evidence of undue influence or unsoundness of mind.

The court refused two instructions asked by appellants. One was, in substance, that a child had no legal or natural right to his father's estate as against the provisions of a valid will, and that a parent free from undue influence and of sufficient mental capacity might give his property to any person he chose. The other was, that even if it appeared that William Donnan received less property by the will than the other children, and that this resulted from an unreasonable dislike or prejudice on the part of the testator toward his son William Donnan, that would afford no ground for setting aside the will if the testator was of sound mind and memory and not unduly influenced when he executed it. These instructions stated correct principles of law, which appellants were entitled to have given to the jury. Appellee insists they were, in substance, embraced in instruction No. 2 given for appellants. We cannot agree with this contention. The refusal of the instructions referred to left nothing to supplement instruction No. 14 given on behalf of appellee.

For the error in giving said instruction for appellee while refusing the two instructions above referred to which were asked by appellants, and for the error in admitting incompetent testimony, the decree is reversed and the cause remanded.                    *Reversed and remanded.*