JOHN BAKER *et al.* Plaintiffs in Error, *vs.* DAVID BAKER *et al.* Defendants in Error.

*Opinion filed February 19, 1909—Rehearing denied April 7, 1909.*

1. DEEDS—*what is not ground for setting aside deed.* Old age, eccentricity, and even partial impairment of the grantor's mental faculties, are not ground for setting aside a deed if the grantor had sufficient mind and memory to comprehend the nature and effect of the transaction and to protect his own interest.

2. SAME—*when opinion evidence as to grantor's incapacity is not ground for setting aside the deed.* Opinion evidence that the grantor in a deed was incapable of transacting ordinary business is not ground for setting aside the deed, where it appears that he did, in fact, transact business, including deals in stock, land, timber and grain, up to the close of his life and no transaction is shown which was not properly conducted.

3. SAME—*when a deed will not be set aside for alleged undue influence.* A deed from father to son will not be set aside for alleged undue influence by the son, who had been informed of the intended execution of the deed and was present when it was made, where the evidence fails to show a fiduciary relation between the

grantor and grantee, and, so far as appears, the deed was entirely the conception of the grantor.

4. SAME—*what amounts to an adoption of deed by the grantor.* Where, after a deed from father to son has been executed and acknowledged and taken by the notary to his office to affix his notarial seal, the name of the son's wife is added as grantee as the result of an alleged message from the grantor delivered by the son, the subsequent reading of the deed by the grantor and its delivery by him to the son's wife amount to an adoption of the deed as written and effect a valid conveyance to both grantees.

5. WITNESSES—*when wife of a deceased grantor may testify as to delivery of deed.* A wife is incompetent to testify as to conversations or admissions of the husband during the marriage, irrespective of the question of her interest in the suit; but where her interest is adverse to the sustaining of a deed she is competent to testify to the act of the husband in delivering the deed to the grantee, as such act involves no conversation or admission.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

C. E. RUSSELL, FREE P. MORRIS, and W. E. LEWIS, for plaintiffs in error.

CRANGLE & VENNUM, A. F. GOODYEAR, and C. A. ALLEN, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Irwin W. Baker died intestate on July 27, 1906, leaving surviving him his wife, Elizabeth Baker, his five sons, David, Irwin Wallace, Isaac Clinton, Frederick and John, and one daughter, Nancy Jane. On March 16, 1906, he and his wife executed four warranty deeds, conveying to each of the sons, except John, certain land in Iroquois county, aggregating 440 acres. On February 14, 1907, John and Nancy Jane filed their bill in the circuit court of Iroquois county to set aside the four deeds upon the ground of fraud and undue influence exercised upon Irwin W. Baker, and his mental incapacity. Upon a hearing the bill

was dismissed for want of equity, and the complainants prosecute a writ of error.

The grantor was seventy-four years old at the time the deeds were executed. He lived in Cissna Park, in Iroquois county, and had lived there and in the vicinity for many years. Besides the land involved in this controversy he had accumulated a large amount of real estate and personal property which descended to his heirs. It is claimed that during the last year of his life he was afflicted with senile dementia to such an extent as to make him incapable of understandingly and rationally executing the conveyances in controversy. The evidence shows that old age was telling seriously upon his physical and to some extent upon his mental powers. He was not so strong as before, his hands shook, he was partially deaf, his memory was impaired. Quite a number of witnesses testified that they did not regard him as having sufficient mental capacity to transact business, and a somewhat smaller number testified to an opposite opinion. The weight of this evidence on either side is diminished by the fact that the opportunities of the respective witnesses for observation were in some instances very limited, and their opinions seem to have been based upon casual notice of trivial circumstances not sufficient to warrant a conclusion as to mental capacity. He failed at times to recognize persons whom he had known, but several of the instances testified to were cases of young men whom he had not seen frequently or recently. There is no evidence that he did not recognize his family and friends and those with whom he associated or transacted business. There was evidence of his being confused as to where he was on two or three occasions, the last time at Danville, two or three weeks before his death, when he appears to have been completely lost. Dr. Roberts, the physician who attended him during the last eight months of his life, testified to Mr. Baker's condition of gradual senile decay, the impairment of his strength and his nervous system, his in-

distinctness of speech and stumbling gait, and says that judging from his illness prior to the date of the deeds, and subsequent, there would be a question as to his ability to properly conduct his business. But as a matter of fact there is no doubt that he did conduct his business to the close of his life and no transaction is shown which was not properly conducted. He made deals concerning land, stock, grain and timber. He had tile laid, staked out the lines, gave directions as to the size of the tile and the depth at which it should be laid. He settled and paid accounts presented against him and refused to pay claims which he thought unjust. It would prolong this opinion to an unreasonable length and serve no useful purpose to attempt to review in detail the testimony of the numerous witnesses and the circumstances on which their opinions as to the mental capacity of the grantor are based. They are not sufficient to justify a finding that the grantor was not able to understand and comprehend the business he was engaged in. The deeds were prepared by Henry B. Harvey, who was a witness on the hearing. Mr. Baker spoke to him about making the deeds a week in advance, and the day they were made sent for him to come to Baker's house. There Mr. Baker had his old deeds sorted out and furnished the descriptions for each deed, together with the names of the grantees. Harvey was there two or three hours. He went there in the forenoon, but did not get through and went back after dinner.

Old age, eccentricity, even partial impairment of the mental faculties, are not sufficient grounds for setting aside a deed. If the grantor has sufficient mind and memory to comprehend the nature and effect of the transaction and to protect his own interest his deed cannot be set aside for want of capacity. *Sears* v. *Vaughan,* 230 Ill. 572; *Beaty* v. *Hood,* 229 id. 562.

It is claimed that the deeds were procured to be executed by the undue influence of David Baker, and that he

sustained such a fiduciary relation to the grantor as to cause a voluntary conveyance to him to be viewed with great suspicion. The evidence contained in the record does not sustain such claim. It does not show that David suggested the execution of the deeds or even knew beforehand what land was to be conveyed to him. He was informed the day before the deeds were made that they were to be made and he and his wife were present when they were executed, but so far as appears they were entirely the conception of the grantor. While David was frequently with his father and was often present when the latter transacted business, the evidence does not show that there was any relation of confidence or trust between them other than that ordinarily existing between father and son. There is no evidence that David had acquired a dominion over his father or control of his business or property, or that he exercised, or attempted to exercise, any influence in the conduct of his business.

After the deeds had been signed and acknowledged they were taken by Harvey to his office for the purpose of affixing his notarial seal to the certificates of acknowledgment. The deed which appears in the record with the names of David Baker and Cynthia Baker as grantees then contained the name of David Baker only, as grantee. While Harvey had the deeds in his office David Baker came there and told him that his father wanted the deed to David changed by inserting the name of Cynthia, David's wife, as grantee with David. Harvey inserted Cynthia's name as requested and delivered all the deeds to David. This deed was not again acknowledged. It is insisted that this change in the deed, made with the knowledge of the grantee after execution and in the absence of the grantor, avoided the deed. It appears, however, that the deed was taken back to the grantor, who, after reading it over, delivered it to Cynthia. This amounted to an adoption of the deed by the grantor as it was then written, and the deed took effect upon its delivery to Cynthia as a valid conveyance to both the grantees.

The only testimony as to the delivery of the deed after the alteration is that of Elizabeth Baker, the widow of Irwin W. Baker, and it is objected that she was an incompetent witness because she was a party to the suit and interested in its result, and as widow of the grantor could not testify to his acts. So far as her interest is concerned it was with the plaintiffs in error. They were not adverse parties. If the deeds were set aside she would be entitled to her dower, which otherwise was barred. A very large part of her testimony was incompetent. Independent of any question of interest, on grounds of public policy, neither spouse could, at common law, testify to conversations with or admissions by the other during the marriage, whether called as a witness before or after the termination of that relation. (*Donnan* v. *Donnan,* 236 Ill. 341; *Goelz* v. *Goelz,* 157 id. 33; *Fletcher* v. *Shepherd,* 174 id. 262.) But the fact that, upon the deed being brought back, the grantor read it and handed it to the grantee involves no conversation or admission, and the wife is a competent witness to testify to such fact. (*White* v. *Willard,* 232 Ill. 464.) Mrs. Baker was examined at length and testified as to many conversations and statements of her husband. All such testimony was incompetent and must be rejected. But her testimony as to the delivery of the deed was competent, and the other testimony, aside from hers, is sufficient to sustain the decree in other respects. Her credibility as a witness is severely attacked, but we do not feel warranted in rejecting her testimony so far as competent.

The decree of the circuit court is affirmed.

*Decree affirmed.*