WILLIAM S. DONNAN, Plaintiff in Error, *vs.* CHARLES L. DONNAN *et al.* Defendants in Error.

*Opinion filed October 26, 1912—Rehearing denied Dec. 6, 1912.*

1. WILLS—*rule as to giving peremptory instruction in a will contest case is the same as in suits at law.* The same rule applies with reference to giving a peremptory instruction in a suit to contest a will as obtains in jury trials in actions at law, and the question presented by the motion for such instruction is whether there is any evidence fairly tending to prove the cause of action or fact affirmed.

2. SAME—*when issue of undue influence should go to the jury.* Proof that a son of the testator, the latter being ill at the time, took him in a buggy fifteen miles to a certain city on the pretense of seeing a doctor and there procured the execution of a will by which he was largely benefited and his elder brother practically disinherited, is sufficient to require the submission of the issue of undue influence to the jury.

3. EVIDENCE—*widow cannot testify as to the physical condition of the testator.* In a suit to contest a will the testator's widow is not a competent witness to testify as to the testator's condition of health in the latter part of his life and to certain of his habits during that time, as she is not competent to testify to any fact or transaction the knowledge of which was obtained by reason of the marriage relation.

4. SAME—*what may be testified to by widow in a will contest case.* In a will contest case the testator's widow may testify that a son, who was largely benefited by the will, called frequently at the house for some months before the will was executed, and that on the morning the will was executed he came to the house and

took his father away in a buggy for the alleged purpose of consulting a physician, and that they returned late in the evening.

5. SAME—*when objection to offer of evidence is properly sustained.* In a will contest case it is proper to sustain an objection to an offer to make certain proof by the testator's widow, where the offer as made contains matters concerning which the widow is not competent to testify though competent to testify as to the other matters.

6. UNDUE INFLUENCE—*exent to which inequality of distribution may be considered.* While the inequality of the distribution of property is not, in itself, evidence of undue influence, it may be considered as a circumstance in connection with other proofs on the subject.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

GEORGE J. SMITH, and BEACH & TRAPP, for plaintiff in error.

BLINN & COVEY, and R. HUMPHREY, (W. R. BALDWIN, guardian *ad litem,*) for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is a writ of error sued out to review a decree of the circuit court of Logan county sustaining the will of Alexander Donnan. This case is before us for the second time, the decision on the former review being reported in *Donnan* v. *Donnan,* 236 Ill. 341. For a statement of the case reference will be had to the former opinion.

At the conclusion of the second trial a peremptory instruction was asked by defendants in error upon the issue of undue influence, which the court refused. Three interrogatories were submitted to the jury, as follows: (1) Is the instrument offered in evidence the last will and testament of Alexander Donnan, deceased? (2) Was the said Alexander Donnan, deceased, at the time of the execution of said instrument alleged to be his will, of sound mind

and memory? (3) Was the execution of said instrument alleged to be the will of Alexander Donnan, deceased, procured by undue influence? The jury returned a verdict answering affirmatively the first and third interrogatories and making no answer to the second. The court stated to the jury that their verdict was inconsistent and not in proper form, and directed them to again retire and determine upon an answer to the second interrogatory, informing them at the same time that an affirmative answer to the third interrogatory required a negative answer to the first. Thereafter counsel for defendants in error again requested the court to give to the jury a peremptory instruction upon the issue of undue influence. This motion was allowed. The jury were returned and instructed that the evidence was not sufficient to justify a finding that the execution of the will was procured by undue influence and directed to answer the third interrogatory in the negative. The jury thereupon retired and returned a verdict answering the first and second interrogatories in the affirmative and the third in the negative.

It is contended that the court erred in giving the peremptory instruction, for two reasons: (1) That there is sufficient evidence on the subject of undue influence to submit the case to the jury; and (2) that in any event it was error for the court to so instruct the jury after they had returned their finding on that phase of the case. As we are of the opinion that this issue should have been submitted to the jury under the evidence it will not be necessary to pass upon the second reason urged.

Alexander Donnan died seized of 360 acres of land, 320 acres of it constituting the east half of section 20, the remaining 40 acres being the south-west quarter of the south-west quarter of section 21. By his will the testator directed that the 40 acres in section 21 be sold and the proceeds used for the payment of his indebtedness. The half section was devised equally, in respect to the number

of acres, to the sons Charles and Edward, subject to the life estate of the widow in 120 acres thereof. To Edward were devised a life estate in the south 80 acres and an irregular tract containing 80 acres in the north end of the half section, in fee. The remaining 160 acres, lying in a body, were devised to Charles,—80 acres for life and 80 acres in fee,—and Charles was made the executor of the will without bond. The will was executed May 5, 1904. The evidence disclosed that for some time before that, and up until the time of his death, Alexander Donnan was afflicted with the disease known as arterio sclerosis,—an incurable, progressive disease. His physician, called on behalf of the proponents, testified that this disease ultimately affects the mind by shutting off the necessary supply of blood to the brain, and that this result was finally produced in the case of Alexander Donnan. During the winter of 1903 and 1904 and the spring of 1904 Alexander Donnan was in very poor health. He was described by the witnesses both for proponents and contestants as feeble, sick and weak during that period. Plaintiff in error left the home of the testator just prior to the arbitration of his dispute with him over wages, in 1902. Both of the arbitrators testified in this case,—one for plaintiff in error and the other for defendants in error. They testified that the result of the arbitration was satisfactory to both testator and plaintiff in error. There is no question but that the award was made for the sole purpose of compensating the plaintiff in error for the work he had done for his father and represented the amount of wages due him. By his will the testator bequeathed to plaintiff in error the sum of $50, and stated that he gave him only that amount because he had theretofore made gifts to him of such amounts, in the aggregate, as he thought would equal the portion that he gave by the will to each of his other sons. So far as this record discloses, the amount paid plaintiff in error as a result of the arbitration is the only amount ever given

him by the testator. Alexander Donnan was an illiterate man, being unable to read or write. During the time plaintiff in error lived with him he relied upon plaintiff in error exclusively to conduct his business for him, and the evidence on behalf of the plaintiff in error tends to show that during that time all matters of business relative to the management of the farm, the sale of any of its produce or the purchase of live stock or any material necessary in connection with the running of the farm, were referred by the testator to him. On the day of the arbitration Charles was present and advised constantly with his father, and he and his father during the major portion of the time were engaged in private consultation. From that time Charles to a great extent, and Edward to a lesser extent, assisted their father in the management of his affairs. While William remained with his father for twenty-six years after he became of age, Charles and Edward each married and left the home of the testator at the age of twenty-two years. After William had left his father's home Charles became a frequent visitor and took a prominent part in the management of his father's business affairs. He was frequently in consultation with the testator, and his father seemed to rely upon him for assistance in all business matters. During the spring of 1904 he was at the home of the testator frequently, sometimes staying a half day at a time, and at that time he transacted all his father's business. On one occasion, in April of that year, when at the testator's home, he requested the wife of Alexander Donnan and her daughter to leave the room in order that he might confer with his father privately. This request was complied with. On May 4, 1904, the testator was more poorly than usual. On the morning of the next day Charles came to his father's home on horseback and inquired as to his condition, and stated that he intended taking him to the city of Lincoln to see Dr. Brown. He returned to his home and returned shortly thereafter with a

buggy, in which he took his father to Lincoln, returning in
the evening of that day.   Dr. Brown was the physician who
had been attending Alexander Donnan, but he testified that
he had no recollection of Charles Donnan and his father
calling on him on May 5, 1904.   He stated that the testator
usually had a large amount of money with him on the oc-
casions upon which he treated him and that he always paid
him in cash, and where he received a cash payment he made
no record of it, and therefore had no means of determining
from his books whether he had treated Alexander Donnan
on May 5, 1904, in case he had paid him at that time for
his services.   He testified, however, that he had no recollec-
tion of treating the testator in his office at any time during
the year 1904.   On that day Charles and the testator called
upon an attorney in the city of Lincoln, who drafted the
will in question, and it was there executed by Alexander
Donnan.   The attorney testified that Charles and his father
called at the office together and that they then retired into
his consultation room.   It is not clear from the abstract
or the additional abstract whether Charles Donnan went
into the private room with the attorney and his father.
The testimony of the attorney is that Alexander·Donnan
then told him how he desired to have his will drawn and
gave him the data; that he told the testator to return about
the middle of the afternoon and he would have the will
ready for execution, and that Donnan and Charles there-
upon left his office.   He testified that they returned about
one o'clock, when he had just started to dictate the will
to a young man in the office, who was transcribing it upon
the typewriter; that the testator then sat down beside him,
and Charles sat down beside his father, while the dicta-
tion was completed; that he dictated the will a clause at
a time, and as he completed the dictation of each clause
he asked the testator if that was the way he wanted it, and
in each instance he replied in the affirmative.   After the
will had been drawn in this manner it was executed and

witnessed and Charles and his father left the office to-
gether. The attorney testified that Donnan returned to his
office some six weeks later and paid him his fee for draft-
ing the will. On cross-examination he was asked if he
knew Frank Fletcher, and upon replying that he did, he
was asked if he told Mr. Fletcher, shortly after the testa-
tor's death, in referring to the execution of the will, that
Charley brought the old man over there and he made a
will; that Charley was sitting by the old man, and when
he asked the old man a question about the will he turned
around and asked Charley, and if he then said to the tes-
tator, "Oh! no, no; Charley isn't making this will, you
know." He replied that Fletcher was a client of his but
he had no recollection of his being in his office shortly after
Donnan's death and having a conversation with him in
reference to the will, and that he had no recollection of
making such statement to him. Plaintiff in error called
Fletcher as a witness, who testified that those statements
were made to him by the attorney.

The same rule applies in reference to giving a peremp-
tory instruction in a suit to contest a will as obtains in
trials in actions at law, and the question presented by such
a motion is, whether there is any evidence fairly tending
to prove the cause of action or fact affirmed. (*Geiger* v.
*Geiger,* 247 Ill. 629.) When we consider the evidence of-
fered on the part of contestant as bearing on the issue of
undue influence, together with all the reasonable inferences
and intendments to be drawn therefrom, it cannot be said
that there was no evidence before the jury fairly tending
to establish the allegations of the bill that the will was
procured through undue influence. Charles Donnan, upon
the pretense of taking his sick father to a physician, drove
with him fifteen miles to the city of Lincoln, accompanied
him to the office of an attorney and was present while a
will was drawn which largely benefited him and practically
disinherited his older brother. "Where a will is written,

or procured to be written, by a person largely benefited by it, such circumstance excites stricter scrutiny and requires stricter proof of volition and capacity. The proof required in such cases must be such as to fully satisfy the court or jury that the testator was not imposed upon, but knew what he was doing and what disposition he was making of his property when he made his will. The active agency of the beneficiary of a will in procuring it to be drawn, especially in the absence of those who have at least equal claims upon the justice of the testator, and where the testator is enfeebled by old age and disease, is a circumstance which indicates the probable exercise of undue influence. Where the mind is wearied and debilitated by long continued and serious and painful sickness it is susceptible to undue influence and is liable to be imposed upon by fraud and misrepresentation." (*England* v. *Fawbush,* 204 Ill. 384; *Cheney* v. *Goldy,* 225 id. 394.) While the inequality of the distribution of the property is not, in itself, evidence of undue influence, it may be considered as a circumstance in connection with other proof on the subject, (*Francis* v. *Wilkinson,* 147 Ill. 370; *Schmidt* v. *Schmidt,* 201 id. 191; *Donnan* v. *Donnan, supra;*) and this, in connection with all the other facts bearing upon the question of undue influence, was sufficient to require the issue to be submitted to the jury.

Sarah A. Donnan, the widow of the testator, was called as a witness on behalf of contestant. Her testimony was excluded upon objection by defendants in error, and this action of the court is assigned for error. An offer of proof was made which contained matter concerning which Mrs. Donnan was not competent to testify, and for that reason objection to the offer as made was properly sustained. Plaintiff in error offered to prove by this witness testator's condition of health from September, 1903, up until the time of his death, February 20, 1906, and certain of his habits during that time. This testimony was prop-

erly excluded. She was not a competent witness to testify to any fact or transaction the knowledge of which was obtained by means of the marriage relation. (*Schreffler* v. *Chase,* 245 Ill. 395.) Upon the former trial Mrs. Donnan testified on behalf of the plaintiff in error, and we held in *Donnan* v. *Donnan, supra,* that her testimony should not have been admitted in reference to various subjects, among them being the mental condition of the testator. In this case the physical condition of the testator had a direct bearing upon his mental condition, and this testimony was incompetent under that holding.

Plaintiff in error further offered to prove by this witness that Charles Donnan came to the testator's house frequently, and during the months of March, April and May, 1904, he sometimes came daily; that on one occasion he asked the witness and her daughter to withdraw from the room that he might speak privately to his father, and that they did so; that on the morning of May 5, 1904, (the day the will was executed,) Charles rode up to his father's house on horseback and inquired of the witness of the testator's condition; that she informed him, and he said he would take him to Lincoln to see Dr. Brown; that he turned about, got on his horse, went home, got his horse and buggy, came back and took his father to Lincoln with him, returning late in the afternoon or evening of that day. This testimony, under the holding in *Donnan* v. *Donnan, supra,* was competent, and, had it been offered separately, should have been admitted.

As the decree must be reversed for the errors indicated, we refrain from a discussion of the merits of the case or the weight of the evidence on the question of mental capacity.

The decree of the circuit court is reversed and the cause remanded for a new trial.  *Reversed and remanded.*