E. C. WAGLE, Appellee, v. IOWA STATE BANK, Appellee, ALEX JENKINS, Appellant.

**DEEDS:** Alterations—Alterations Subsequent to Delivery—Failure to Redeliver and Reacknowledge—Constructive Notice. Material alterations in an instrument affecting real estate, made *subsequent* to its complete execution, acknowledgment and delivery, and with the consent of the grantor, have the effect of creating an entirely *new* instrument and, in order that the recording of such altered instrument may carry constructive notice of its contents, it is necessary that there be a *redelivery*, a *reacknowledgment* and a *rerecording*.

PRINCIPLE APPLIED: One Jenkins owned real estate subject to a $400 mortgage. He gave a bank a $600 unacknowledged mortgage. Later, he and his wife executed, acknowledged and delivered to Mary Paulley a deed to the property "free from incumbrance, except $1,000 which grantee assumes and agrees to pay." This mention of "$1,000" was intended to embrace the $400 and the $600 mortgages. This Jenkins-Paulley deed, *as originally executed,* was never recorded. Still later, Mary Paulley married one Trahan, and certain negotiations were had; and Jenkins, but not his wife, consented, in writing, that the name "Mary Paulley" might be erased from her deed, and Trahan's name inserted. This was done, and while, in legal effect, Jenkins made a redelivery of the altered deed to Trahan, neither he (Jenkins) nor his wife *reacknowledged* the altered deed. The altered deed was then recorded. Still later, Trahan conveyed the property to one Wagle, "subject to a mortgage of $400, or the record liens now shown against said property." Wagle, prior to his purchase, discovered only the $400 mortgage and bought, for full value, on that understanding, and without knowledge of said alteration; still later, the said bank obtained an acknowledgment of its $600 mortgage and placed it of record. *Held,* the alteration in the Jenkins-Paulley deed rendered it non-recordable without a new

acknowledgment by Jenkins and his wife, and therefore Wagle was not charged with constructive notice of the record of the altered deed.

**DEEDS:    Delivery—Acts Constituting Delivery.    Anything which**
2    signifies the intention of the. grantor of a deed to part with his dominion over the paper, so that it may become a muniment of title in the grantee, operates as a legal delivery.

PRINCIPLE APPLIED:    One Jenkins conveyed land to one Mary Paulley. Later, Mary married one Trahan. For some reason, it was desired to erase Mary's name as grantee and to insert her husband's name in lieu thereof. The deed was then in the possession of the husband, of which fact Jenkins had knowledge. Jenkins consented to the proposed change. The change was made by the husband's agent. *Held* sufficient to constitute a delivery of the altered deed to the husband.

**PRINCIPAL AND AGENT:    The Relation—Sufficiency of Evidence.**
3    Evidence reviewed, and *held* insufficient to constitute the relation of principal and agent.

**MORTGAGES:    Recording—Failure to ̇Record—Loss—Who Charge-**
4    **able.**    When the non-recording of a mortgage results in loss by reason of intervening rights, the mortgagor must suffer the loss, when his failure to acknowledge the mortgage prevented such recording.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

MONDAY, MARCH 20, 1916.

ALEX JENKINS acquired Lot 14 in Block 3 in Rollinson's Garden Addition to Ft. Des Moines,—since taken into the city of Des Moines, May 12, 1909,—subject to a mortgage of $400. On August 7, 1909, Jenkins, his wife joining, executed a mortgage to the Iowa State Bank, as collateral security for the payment of the purchase price of lots bought on contract. This mortgage was first filed for record August 25, 1913. Not having been acknowledged, it was subsequently withdrawn and acknowledged September 11, 1913, its date being changed accordingly, and it was again filed for record on the same day. Jenkins, his wife joining, executed a special warranty deed to Mary Paulley, October 10, 1910, reciting therein that

said premises were "free from incumbrances, except $1,000 which the grantee assumes and agrees to pay." Such agreement was the entire consideration. This deed, in the form stated, was never recorded. On January 2, 1912, Jenkins authorized in writing the name of Napoleon Trahan to be inserted as grantee in the deed, instead of that of Mary Paulley, whom Trahan had married. This change was probably made by one Wilson, who procured Jenkins' consent, and the deed, as so changed, was filed for record January 3d following. On March 6, 1912, Trahan entered into a contract to exchange the lot, "subject to a mortgage of $400 or the record liens now shown against said property," to plaintiff for real estate in Webster City worth about $500; and in pursuance thereof, delivered to him a deed dated December 13, 1911, which was filed for record March 18, 1912. At that time, there was an outstanding tax sale certificate, to redeem which the plaintiff paid $40.40, and the taxes payable that year were unpaid, and the lot was worth $1,000. Prior to receiving the deed, plaintiff made search of the records in the county recorder's office and found of record the $400 mortgage only. Plaintiff tendered the Iowa State Bank $1.25, and demanded the execution by it of a quitclaim deed to the premises. This was refused, and thereupon this suit was commenced, praying that title be quieted, that the mortgage of $600 be canceled of record, and that an attorney's fee of $25 be taxed against said bank. Both defendants answered, and Jenkins filed a cross-petition, demanding that the amount of the mortgage be applied by the bank on his indebtedness to it. On hearing, decree was entered as prayed by plaintiff, the cross-petition was dismissed, and $25 as attorney's fees taxed against the bank. Jenkins appeals.—*Affirmed.*

*Brown & Missildine,* for appellant.

*William B. Brown* and *E. C. Corry,* for appellees.

LADD, J.—I. The controversy is over a mortgage of $600

executed by Alex Jenkins, August 7, 1909, on a lot then owned
by him, to the Iowa State Bank, and not recorded until Sep-
tember 11, 1913.  In the meantime, October
10, 1910, Jenkins, his wife joining, executed
a warranty deed conveying the lot to Mary
Paulley, "free from incumbrances, except
$1,000 which the grantee assumes and agrees
to pay."  This deed was not filed for record
until January 3, 1912, after the name of the
grantee, Mary Paulley, had been erased, and that of Napoleon
Trahan, whom she had married, inserted instead.  This was
done in pursuance of written authority of Jenkins, given the
defendant before deed was recorded.  Trahan and wife con-
veyed the lot to the plaintiff by warranty deed, dated Decem-
ber 13, 1911, but recorded March 18, 1912, "subject to the
mortgage of $400 or the record liens now shown against said
property."  This mortgage covered the lot when Jenkins
acquired it in April, 1909.

**1. DEEDS: altera-
tions: altera-
tions subse-
quent to deliv-
ery: failure to
redeliver and
reacknowl-
edge: con-
structive no-
tice.**

No question is made but that plaintiff was charged with
notice of the recitals in the conveyance from Jenkins to Tra-
han, if that conveyance as changed was acknowledged.  *Aetna
Life Ins. Co. v. Bishop*, 69 Iowa 645; *Huber v. Bossart*, 70
Iowa 718.  Appellee (plaintiff) contends, however, that, as
the change in names of grantee occurred after the deed became
effective by delivery to convey the land to Mary Paulley, the
substitution of the name "Napoleon Trahan" as grantee,
instead of hers, operated as a new deed.  Conceding, as appel-
lant contends, without so deciding, that the grantee ratified
this change, we inquire whether in such circumstances the
deed must have been redelivered and reacknowledged, in
order that the record thereof shall be constructive notice to
third persons.  If so, then plaintiff, in acquiring the lot from
Trahan, was not charged with notice of recitals in the deed
from Jenkins to Trahan, and took it freed from the lien
of the mortgage.  On the other hand, if another delivery
and acknowledgment were not essential to the recording of

the deed and thereby imparting constructive notice, then plaintiff must be deemed to have been put on inquiry concerning the mortgage in acquiring title to the lot. There is no claim that the acknowledgment is defective; the contention is that, in the form recorded, it had not been acknowledged at all; and therefore the record of it did not impart constructive notice.

Of course, the wife of the grantor, not having consented to the change, was not bound thereby. For all that appears, she might have been perfectly willing to join in a deed to Mary Paulley, and yet decline to part with her dower interest to Trahan. Nor do we think a change in the parties to a deed— that is, of grantee or grantor—after its delivery can effect the symbolic transfer of title already accomplished, or can be made without creating of it a new instrument of conveyance. The instrument, prior to alteration in such circumstances, has accomplished its purpose by the transmission of title to the then grantee, and the latter is not divested by the change. If anything is destroyed by the change, it is the deed, and not the title.

A deed may be altered, mutilated, changed or wholly destroyed so as to be no longer competent evidence or capable of being introduced in evidence, yet the title vested in the grantee is not thereby destroyed. 1 Devlin on Real Estate (3d Ed.), Sec. 461a; 13 Cyc. 721; *Waldron v. Waller*, 32 L. R. A. (N. S.) 284, 293, and note. In *Gibbs v. Potter*, 166 Ind. 471 (9 A. & E. Ann. Cas. 481), the court announced the principle to be well settled that the alteration or destruction of a deed subsequent to its full execution, although done by consent of parties, will not divest the original grantee of title or revest such title in the grantors. *Stanley v. Epperson*, 45 Tex. 644; *Tabor v. Tabor*, 136 Mich. 255 (99 N. W. 4); 9 Am. & Eng. Ency. of Law (2d Ed.) 163; *United States v. Widow and Heirs of West*, 22 How. (U. S.) 315 (16 L. Ed. 317); *Woods v. Hilderbrand*, 46 Mo. 284 (2 Am. R. 513); *Wheeler*

*v. Single,* 62 Wis. 380 (22 N. W. 569). See *Slattery v. Slattery,* 120 Iowa 717. Where the instrument is so changed as that purported conveyance is to a different person from the original grantee, or purports to convey different property, it is, in effect, a different instrument, and must be redelivered and reacknowledged to become effective as a conveyance and to be recorded. Thus, in *Moelle v. Sherwood,* 148 U. S. 21 (37 L. Ed. 350), the description of the property in the deed was changed after it had been delivered and recorded, and the court said:

"An alteration in the description of property embraced in a deed, so as to make the instrument cover property different from that originally embraced, whether or not it destroys the validity of the instrument as a conveyance of the property originally described, certainly does not give it validity as a conveyance of the property of which the new description is inserted. The old execution and acknowledgment are not continued in existence as to the new property. To give effect to the deed as one of the newly described property it should have been reexecuted, reacknowledged, and redelivered. In other words, a new conveyance should have been made."

In *Waldron v. Waller,* 65 W. Va. 605 (32 L. R. A. (N. S.) 284, 285), the change was by adding to the property conveyed after delivery of the deed, and the court observed that:

"The authorities we think make it clear that, although such alteration may have been with the consent of the grantors, the ·deed cannot operate to invest in the grantee land not covered by the original grant, without a redelivery of the deed by them, and if it has been acknowledged before the alteration, the deed should be again acknowledged"—citing, among other authorities, 1 Devlin, Deeds, Sec. 461a.

Cases are sometimes cited as holding to a contrary doctrine, but upon examination they do not seem to impair the rule as stated. Thus, in *Baker v. Baker,* 239 Ill. 82 (87 N. E.

868), the deed, after having been acknowledged, was taken to the notary's office to attach the notarial seal, when he was advised by the grantee that grantor wished him to attach the name of the grantee's wife as one of the grantees. He did so and attached his seal, and turned it, with other. deeds, over to the original grantee, who carried them to the grantor. The latter read the deed over and then delivered it to said grantee's wife. This was held to have been an adoption of the deed in its altered condition and that it was valid. The question of notice and whether it should have been reacknowledged were not involved. In *Abbott v. Abbott,* 189 Ill. 488 (82 Am. St. 470), the court expressly found the changes to have been made before delivery. In *Stiles v. Probst,* 69 Ill. 382, the deed was redelivered and the question of notice was not involved. In *Hunt v. Nance,* 122 Ky. 274 (92 S. W. 6), the existence of actual notice was found, and whether the interlineation after delivery changed the estate conveyed was not decided. In North Carolina, legal title does not pass until registration, and, prior thereto, no right intervening as between the grantor and grantee, the deed may be surrendered to the grantor, canceled or changed as may be agreed by them. *Respass v. Jones,* 102 N. C. 5; *Davis v. Inscoe,* 84 N. C. 396.

In *Chezum v. McBride,* 21 Wash. 558 (58 Pac. 1067), the court, without discussing this question, upheld a title founded upon a deed which had been altered by adding a section number in the description of the land conveyed, and by inserting upon the margin of the deed a further description, where it appeared that the alteration had been ratified by grantor, and he had never afterwards exercised any act of ownership over the land in controversy. Whether the land originally intended to be conveyed lay in both section numbers, or in the one originally in the deed, or in the one inserted, cannot be ascertained from the opinion. In *Eadie v. Chambers,* 24 L. R. A. (N. S.) 879 (18 A. & E. Ann. Cas. 1096), the court held that an alteration reducing the fractional interest of a

mine conveyed, from three fourths to one half, would convey one half thereof if the deed were redelivered. Manifestly this would be so, for the deed before altered would convey that much.

It will be observed that none of these decisions are in conflict with the rule as stated that, where the name of the grantee or the description of the property has been changed after delivery, the changed instrument must be regarded, as to the new grantee or the property not previously included, as a new instrument, exacting delivery and acknowledgment to be recordable. Appellant relies somewhat on cases where deeds are acknowledged before the names of the grantees have been inserted. See *Creveling v. Banta,* 138 Iowa 47; *Hall v. Kary,* 133 Iowa 465. There, the acknowledgment is of a conveyance to a person whose name is subsequently to be inserted; while here, it was of an instrument conveying the property to a designated person. In the former, the insertion of the name is essential to effect the transfer of the legal title; in the latter, the conveyance has been completed, and the change is undertaken in order to transfer title from one grantee to the other. The cases are not analogous. We are of opinion that, to become effective as a conveyance, the deed as changed must have been delivered to the new grantee (Trahan) and that, to be recordable in its new form, it must have been acknowledged again.

II. If delivered, however, it would operate as evidence of such conveyance as it purported to be. It appears that one Wilson, acting as the agent of Napoleon Trahan, procured Jenkins' written consent to the substitution of his name in place of that of his wife in the deed. Jenkins testified that he authorized Wilson to make the change. The evidence warrants the inference that he then understood that the deed was in Trahan's possession, and that he would treat it as a conveyance to him. In these circumstances, it would have

2. DEEDS: delivery: acts constituting delivery.

been an idle ceremony to recall the deed and immediately return it as a delivery. Both parties treated what was done as passing the deed when changed to the custody of Trahan, and it was in effect a delivery of the deed to him. The plaintiff received the conveyance from Trahan and wife to himself without knowledge of the conveyance to Mary Paulley; for in its original form it was not recorded, and in its changed form was not recordable, because of not having been acknowledged subsequently to the substitution of plaintiff's grantor (Trahan) as grantee. The plaintiff took, then, without notice of the contents of the deed to his grantor.

III.   Wilson, the agent of Trahan, knew of the existence of the recorded mortgage, and it is claimed that, in examining the records, he was agent of plaintiff; and by reason thereof, his knowledge of such mortgage was imputed to plaintiff. Without deciding whether this would be so, it is enough to say that the record does not warrant the finding that Wilson ever acted for plaintiff.

3. PRINCIPAL AND AGENT: the relation: sufficiency of evidence.

True, he accompanied when the county records were searched; and plaintiff, after testifying that he had relied on Wilson's statement that the only mortgage against the lot was that of $400; that Wilson was but his agent, that he procured the county recorder to examine the records for him, and that the latter said that said mortgage was the only one shown in the records, was asked, ''Who besides the county recorder or her deputy did you have make the search for you? A. Mr. Wilson.'' In view of the fact that Wilson was then representing Trahan in making the trade with plaintiff and was trying to satisfy plaintiff as to the condition of the record, the witness could have meant no more than that Wilson was with him making the search of the records, and should not be understood as having employed him as his agent or employee in so doing.

IV.   The cross-petition of Jenkins was rightly dismissed. The $600 mortgage, when delivered to the bank as

collateral security, had not been acknowledged.  That this
was not done was the fault of the mortgagor

**4. MORTGAGES:**
recording:
failure to re-
cord : loss :
who charge-
able.,

(Jenkins), and not of the bank.  The instru-
ment without acknowledgment might not have
been recorded, and therefore the bank was in
no manner blameable in not filing it for
record.  The plaintiff paid full value for the lot.  Agreement
to pay the $600 was part of the consideration for the execu-
tion of the deed by Jenkins to Paulley.  In consequence of the
machinations of Wilson, someone must lose the amount secured
by the mortgage.  As between plaintiff and Jenkins, the former
is least blameable; for Jenkins was not only responsible for
withholding the mortgage from record, but consented to trans-
formation of the deed to Mary Paulley into a different
instrument.

We are content with the decree, and it is—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.