(No. 26440.—

EDWARD ERGANG *et al.* Appellees, *vs.* ISADORE ANDERSON
*et al.*—(JULIA ERGANG ANDERSON, Appellant.)

*Opinion filed November 24, 1941.*

Thomas M. Poynton, for appellant.

Thomas F. Allman, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

A complaint was filed in the circuit court of Cook county to contest the last will and testament of Mathilda Ergang, and upon trial by jury a verdict was returned finding that the instrument purporting to be the will of Mathilda Ergang was not her last will and testament. Thereupon the court entered a final judgment upon the verdict in favor of the contestants, and decreed that the said purported will of Mathilda Ergang theretofore admitted to probate be set aside and declared null and void. The will disposed of real estate and personal property, and the appeal comes directly to this court as involving a freehold.

Mathilda Ergang was seventy-two years of age. She was a widow, and her heirs-at-law were Elsie Ergang Thorsen, Ida Ergang Schurgers, Clara Ergang Lind, Julia Ergang Anderson, her daughters, and Edward Ergang, her son. On January 24, 1938, her daughter, Julia, came to visit her from Kankakee, Illinois, where she had resided some eighteen years, and on that date she and her mother went to a lawyer, who at that time was unknown to either of them, who prepared the will in controversy, by which all of the decedent's estate was given to Julia Ergang Anderson. The will was contested by the other heirs upon the ground that Mathilda Ergang was not of sound mind and memory, and lacked testamentary capacity to make a will,

and also upon the ground that the will was procured by undue influence upon the part of Julia Ergang Anderson.

The principal contention made by appellant is that the testimony of the lay witnesses did not narrate. sufficient facts to entitle them to give an opinion as to the mental condition of the deceased, and that there was no evidence sufficient to overcome the testimony of the subscribing witnesses that on the day of the execution of the will the testatrix was possessed of testamentary capacity, and that certain instructions given to the jury were erroneous.

There were some nine or ten non-expert witnesses who testified in the cause, as well as the family physician. The facts showed the testatrix suffered a paralytic stroke in May, 1936, and died in July, 1939. Most of the witnesses who testified were old friends and neighbors of Mathilda Ergang. They narrated a considerable number of facts and circumstances from 1936 until the date of her death. Among these facts were that the deceased after her paralytic stroke could not carry on a connected conversation; that she continually had a stare in her eyes, and would frequently be heard calling girl friends of her youth; that on occasions she was seen in the kitchen with bread and a dish of water with which she said she was going to feed the snakes, and on many occasions she would not recognize her old acquaintances. She was unable to use her left arm or leg. One evening in the winter she was found in the street barefooted, in her nightgown. She would prepare feed for chickens when she had no chickens; she would show concern about the return of her husband, that he should be home, and would be hungry, when her husband had been dead for years. She would be seen with her head close to the floor, apparently talking to it. She claimed one of her daughters lived in the basement when the basement was vacant, and at times would want the basement door locked because she was afraid her daughter would harm her, and at other times would try to throw linen to the basement for her daughter to launder. She

had tried to borrow money to visit her husband; she would imagine people were at the door, and open it and ask them to come in when nobody was there. Her conversation was rambling and disconnected. These and many other circumstances were testified to by various witnesses, and after the narration of the part thereof known to the witness he was permitted to give an opinion that the deceased was of unsound mind.

The family physician testified that he had visited the deceased four or five times a year, and that since her paralytic stroke in 1936 up to the time of her death she was mentally affected, and that on the date of the execution of the will did not have testamentary capacity to execute a will.

It is contended these facts, shown to have occurred between the date of the paralytic stroke in 1936 until after the execution of the will in 1939, were so remote that they would not overcome the testimony of the subscribing witnesses as to the testamentary capacity of the deceased on the day the will was executed.

We have frequently held that in determining whether the mind of a testatrix is sound at the time a will is executed it is important to know the condition of her mind a reasonable length of time before and after the execution of the will. (*Peters* v. *Peters,* 376 Ill. 237; *Anlicker* v. *Brethorst,* 329 id. 11; *Voodry* v. *University of Illinois,* 251 id. 48.) The disease from which the deceased was suffering was not a temporary illness; it was one of gradual development, and it apparently grew progressively worse. The witnesses, of course, did not see the deceased at the exact time the will was executed. The facts narrated by them were sufficient foundation for an opinion as to the testamentary capacity of the deceased. *Peters* v. *Peters, supra.*

The lay witnesses in this case talked with the testatrix on numerous occasions, and had ample opportunity to observe her. The rule is that a person who is not an expert

may give his opinion concerning the mental capacity of a testator if it appears that such witness has an acquaintance with the person whose competency is in question, and relates facts and circumstances which afford reasonable ground for determining the soundness or unsoundness of mind of such person (*Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Lewis* v. *Deamude,* 376 id. 219) and the jury may give such value to the opinion so expressed as the capacity, intelligence and observation of the witness who forms it may warrant. The question whether the facts stated form a sufficient basis for such an opinion is one for the trial court to determine, and unless that court has abused its discretion the admission of such testimony will not effect a reversal of the decree, for an opinion not based upon sufficient knowledge is of little probative force. (*Down* v. *Comstock,* 318 Ill. 445; *Speirer* v. *Curtis,* 312 id. 152; *Catt* v. *Robins,* 305 id. 76; *Lewis* v. *Deamude, supra.*) There was no error in the admission of this testimony.

The contention of appellant that the evidence failed to show upon the day of the execution of the will that the testatrix was not possessed of testamentary capacity, and that the evidence given by the attesting witnesses was conclusive of her ability to make a will on that date is without merit. In *Oliver* v. *Oliver,* 340 Ill. 445, it was said: "The subscribing witnesses to a will are not to be regarded as more or less truthful than other witnesses because they are subscribing witnesses. (*Valentine* v. *Second Baptist Church,* 293 Ill. 71.) The testimony of such witnesses may be overcome by any competent evidence, and other evidence, circumstantial as well as direct, may tend as effectually to impeach and discredit the evidence of attesting witnesses as would the formal presentation of witnesses who would avow that the attesting witnesses had bad reputations for truth and veracity. [Citations] Where the testimony is conflicting and the verdict of the jury in a contested will case is not clearly against the weight of the

evidence the finding of the jury must be regarded as conclusive." This contention is based upon the fact that contestants' evidence does not cover the particular day the will was executed. Neither of the subscribing witnesses had ever seen the testatrix and her daughter, but were lawyers into whose office the testatrix and her daughter went for the preparation of the will. None of the authorities cited by appellant hold that the testimony of the subscribing witnesses may not be overcome by other testimony showing the condition of the mind of the testatrix a reasonable time before and after the execution of the will. The question was one of fact to be determined by the jury under proper instructions.

Instruction No. 6 given by the court is as follows: "The court instructs the jury that .although where a person of sound mind is not subject to restraint or undue influence, he or she may dispose of his or her property by will as he or she sees fit, yet, in deciding the issue in this case, you may take into consideration all of the facts and circumstances proved by a preponderance of the evidence in this case, including the provisions of the purported will in question, their propriety or impropriety, their reasonableness or unreasonableness in view of the situations, relations and circumstances of said Mathilda Ergang, as shown to exist by a preponderance of the evidence." It is claimed this instruction directs the jury to consider the propriety or impropriety of the provisions of the will as circumstances to be considered as primary evidence, and therefore prejudicial error under our holding in *Donnan* v. *Donnan,* 236 Ill. 341. We do not think this instruction is subject to criticism. An instruction in almost the same language was approved in *Beemer* v. *Beemer,* 256 Ill. 312, and *Dowie* v. *Sutton,* 227 id. 183. It will be observed that in the criticized instruction the jury was told that the propriety or reasonableness of the provisions of the will might be considered with all of the facts and circumstances proved in

the case, even though a person of sound mind has a right to dispose of her property as she sees fit. The instruction in *Donnan* v. *Donnan, supra,* was not so limited. In that case the jury was told that inequality and unreasonableness in a testamentary disposition of property could be considered as a circumstance tending to show unsoundness of mind or undue influence in connection with other facts, and then further said: "The jury have a right to consider the evidence, if any, of unsoundness of mind and undue influence appearing in the will itself, taking into consideration the estate of the testator's property, his relatives, and the claims of the particular individuals thereof upon his bounty in determining whether or not, at the time of the signing of the supposed will in question, the testator was of sound mind and memory." Thus, the latter part of the instruction, as the court said in that case, was calculated to give the jury to understand that inequality and unreasonableness were primary evidence of an unsound mind or undue influence, and was accordingly condemned.

*Donnan* v. *Donnan* was reviewed in *Catt* v. *Robins, supra,* and it was there held it was error to convey to the jury the impression that inequality and unreasonableness in a testamentary disposition were primary evidence of an unsound mind. Yet, in that case, the criticized instruction directed the jury that in determining whether the testator had sufficient mental capacity to make a will it had a right to take into consideration, along with the other evidence in the case, any unreasonableness or inequality of the provisions of the testator's will with reference to the amount of his property, and the situation and condition financially of his relatives entitled to his bounty. The court held that this instruction accurately stated the law.

In *Down* v. *Comstock, supra,* it was held that unequal distribution of property is not evidence of unsoundness of mind, but may be considered as a circumstance together with all of the other facts shown by the evidence. Instruc-

tion No. 6 did not contain the vice of that in the case of *Donnan* v. *Donnan, supra,* but embodied the requirements that the inequality of distribution in a will might be considered in connection with other facts and circumstances established in the evidence. The case of *Donnan* v. *Donnan, supra,* is authority for the proposition that it is error to given an instruction which tells the jury that inequality or unreasonableness in the disposition of property by the will of the testator is evidence, in itself, of lack of testamentary capacity. It does not hold that such fact may not be considered with all of the other facts proven in the case. While instruction No. 6 was accurate, in itself, it was supplemented by given instruction No. 7, which told the jury that if it believed that Mathilda Ergang, at the time she executed the will, had testamentary capacity and was not under undue influence, then she had a right of her own free will to leave her property to whomsoever she wished, and unequal distribution would not affect the validity of the will. This was sufficient to cure any wrong impression which might be given by instruction No. 6. (*Chaney* v. *Baker,* 304 Ill. 362; *Judy* v. *Judy,* 261 id. 470.) There was no error in the giving of instruction No. 6.

Refusal to give instruction No. 5 is assigned as error. In effect, this instruction told the jury that to justify finding the testator was not of sound mind and memory in the making of the will the evidence must preponderate in favor of unsoundness of mind, and the presumption of sanity must prevail if the evidence is only sufficient to raise a doubt as to such sanity. This principle was fully covered in instruction No. 11, and there was no occasion to instruct the jury twice upon the same subject.

Refusal to give instructions Nos. 1, 2, 3 and 4 is assigned as error, but no authorities are cited to sustain appellant's contention. Examination of the record shows that the subject matter of these instructions was fully covered in other instructions given by the court, and this prob-

ably explains why no citations are contained in the brief to sustain appellant's position.

In the present case there was no evidence as to the testamentary capacity of the deceased offered by the defendants other than that of the attesting witnesses. There was ample evidence upon which a jury could find that Mathilda Ergang did not have testamentary capacity on the day she executed her will, and, as pointed out above, there was no error in giving or refusing instructions to the jury.

It follows the decree of the circuit court of Cook county, setting aside the will, was correct, and the decree is affirmed.

*Decree affirmed.*