(No. 30606.—

HELEN BOHEN DEMARCO, Appellee, *vs.* FLORA BOHEN
McGILL *et al.*, Appellants.

*Opinion filed November 18, 1948—Rehearing denied Jan. 17, 1949.*

THOMAS & DAVIS, of Rockford, (CHARLES H. DAVIS, and HENRY H. CALDWELL, of counsel,) for appellants.

RAPHAEL E. YALDEN, of Rockford, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This suit was filed by Helen Bohen DeMarco in the circuit court of Winnebago County, contesting the will of Susan Bohen. The defendants are plaintiff's sister, Flora Bohen McGill, and her brother, Clement Bohen, the latter also being made a defendant in his capacity as executor of the will.

The first count of the complaint alleged that Susan Bohen was of unsound mind at the time of the execution of the will and the second count charged undue influence on the part of the defendants.

Susan Bohen died on June 20, 1944, leaving as her only heirs the parties to this litigation. She was the owner of property consisting of a dwelling house in which she had formerly resided and a tavern building adjoining, known as the Dutch Mill Tavern, which was operated by her son. She also owned some securities and had a bank account. The deceased was seventy-three years of age at the time she executed the will. She devised to her son the tavern property. The remainder was divided by giving him one third and his sister Flora two thirds. She bequeathed to her daughter Helen, plaintiff herein, the sum of one dollar. The case was tried by a jury and at the close of the plaintiff's evidence, and again at the close of all the evidence, the defendants made a motion for a directed verdict on each count, which motions were denied. The jury returned a verdict that the instrument was not the will of Susan Bohen. The court, after overruling defendants' motion for judgment notwithstanding the verdict and their alternative motion for a new trial, entered a decree setting aside the will and declaring the same null and void.

The defendants have appealed to this court claiming that the court should have directed a verdict in their favor, that the verdict of the jury is against the manifest weight of the evidence and that errors were committed in the admission of certain evidence and in the giving of instructions.

The evidence discloses that for several years prior to April, 1942, the testatrix and her daughter Flora had lived together in the home of testatrix on North Second Street in Rockford; that in April, 1942, Flora moved to 808 Park Avenue, at which time her sister Helen, along with her family, consisting of her husband and four children, moved to the North Second Street home to live with the mother. This was at the request of Flora and was, so far as disclosed by the record, satisfactory to the mother, who was then on good terms with both daughters. The tes-

tatrix lived in her home with her daughter Helen and family from that time until some time in April, 1943, when she went to the home of her daughter Flora, where she remained until her death. The will was executed at the office of Samuel J. Ditto, a practicing attorney of Rockford. The testatrix, accompanied by her daughter Flora Bohen McGill, was taken to the attorney's office by her son, but the son did not enter the building and Flora did not go into the room where the will was signed.

Appellants contend that the record contains no evidence in support of the count charging undue influence, and with this we agree. As to the question of unsoundness of mind at the time of signing said instrument, attorney Ditto testified that he was acquainted with Susan Bohen for three or four years prior to her death; that at one time he acted as her attorney in connection with a lease and that, while she was living at the home of her daughter Flora, he had often seen her sitting on the porch as he passed on his way home and frequently stopped and talked with her; that one one occasion she asked him, "How about drawing a will for me?" and he replied, "Any time you want to;" that they discussed the will and he took notes; that she told him she wanted the tavern property to go to her son because he had worked up a good business there; that her daughter Flora had been good to her and she wanted to do the right thing by her; that she also had another daughter, Helen Bohen DeMarco, with whom she had been living on North Second Street, but they had not paid any attention or taken good care of her and she was not going to leave her a cent. He further testified he again talked with testatrix and she told him just how she wanted the will made and he followed the directions she gave him on this second occasion. He testified that no one other than the testatrix and himself was present during either conversation, but that he knew Flora was in the house because from the porch he could see her walking through. The witness

also testified the will was executed in his private office, that Flora accompanied testatrix but remained in the reception room while the testatrix went into his private office, and that he and the testatrix were there alone for about fifteen minutes before the witnesses, who were doctors, selected by Mrs. Bohen, with offices in the same building, arrived to witness the will.

There is no evidence in the record to show that either Clement Bohen or Flora Bohen McGill exerted any influence upon the testatrix to induce her to make a will. There is no testimony in the record that tends to show that either of them or anyone else exercised any undue influence over the testatrix. In this state of the record the trial court should not have submitted the issue of undue influence to the jury.

Plaintiff does not set out argument to the contrary but contends that if the count charging unsoundness of mind is proved, such proof would be sufficient to sustain the verdict, and cites the cases of *Bundy* v. *West,* 297 Ill. 238, and *Aftalion* v. *Stauffer,* 284 Ill. 54, in support of her position. In the *Bundy case* the defendants made no motion to withdraw the issue from the consideration of the jury and consequently were in no position to complain because the court did not do so. In the *Aftalion case* there was some evidence, although slight, on the issue. Where both mental incompetency and undue influence are charged and there is no evidence upon one of the issues as to which the defendants have moved for a directed verdict, the refusal of the court to grant the motion is not reversible error if such action of the court could not have misled the jury and could not reasonably have affected the verdict; but if the evidence in support of such issue, although not sufficient to warrant the court in submitting the issue to the jury, is of a character to appeal to the prejudice, passion or sympathy of the jury, and the evidence upon the other issue, although such that the issue is properly sub-

mitted to the jury, is in itself of an inconclusive character, then it is reversible error to submit the first-mentioned issue to the jury. (*Challiner* v. *Smith,* 396 Ill. 106.) This court recognizes the tendency of juries to look for an excuse to hold invalid a will making an unequal division of the testator's property among his children. (*Turnball* v. *Butterfield,* 304 Ill. 454; *Freeman* v. *Easly,* 117 Ill. 317.) The sympathy of the average jury being enlisted on the side of the disinherited child, we think it may reasonably be said that evidence that the testator lived in the home of one of the beneficiaries who was present when the will was signed and that the other beneficiary drove the testator in his automobile to the attorney's office on the occasion when the will was executed is, without doubt, evidence of a character to appeal to the jury's sympathy for the disinherited child and rouse its prejudice against· the favored children by whom the testator was thus surrounded at the time of executing his will. Therefore, under the state of the proof disclosed by the record in the· instant case, it is necessary to analyze the evidence on the issue of mental incompetency to determine whether the same is of such an inconclusive character that the decree rendered must be reversed because of the error of the court in failing to withdraw from the jury the issue of undue influence.

The evidence of the contestant on the issue of mental incapacity consisted of the testimony of three witnesses, that of Albert DeMarco, her son, Rosemary DeMarco, her daughter, and Marie Anderson, who was a niece of testatrix's husband. The testimony of contestant's son and daughter was confined to the period of time during which they lived with testatrix in her home on North Second Street, and neither of them testified to ever seeing her or knowing anything about her after she left there in April, 1942. Marie Anderson testified to seeing her while she was living with the DeMarco family and in addition testified to seeing her once in June, 1943. Each of these wit-

nesses testified that in his or her opinion the testatrix was of unsound mind and not capable of transacting ordinary business.

Albert DeMarco testified that his grandmother had suffered a stroke of paralysis several years ago, that she was getting a funny stare, that "you could understand her if you kept near enough so you could get her focused on you," but a stranger would have to ask her two or three times before he could understand her; that she would sometimes evade a question asked her and answer or talk about something else, that she always claimed his sister Susan was making faces at her and making fun of her and it irritated her, that she talked about jumping into the river; that his grandmother was always of a suspicious nature, claiming that people were taking her things, and that she would come into her son's tavern where the witness was working when he was alone and as soon as she would see somebody she would run into the other room.

Rosemary DeMarco, who was thirteen years old at the time about which she testified, said that she slept in the same room with her grandmother, that her grandmother used to cry and mumble at night, that her eyes were glassy and she stared into space.

Marie Anderson testified that she visited the testatrix in June, 1943, while she was living with the DeMarcos; that the testatrix would stare into space and if asked a question would not finish her sentence and would go to something· else; that she said she was tired of living and would walk down and jump into the river; that in June, 1943, the testatrix visited the witness in her home and on that occasion she would stare into space and in conversation would drift off into different subjects.

The evidence introduced by appellants in support of their claim of testamentary capacity is of a much stronger and more convincing character. It consists of the testimony of the attorney who prepared the will and supervised

its execution, that of the two doctors who were the attesting witnesses, of Ann Anderson, a neighbor, who saw the testatrix and visited with her two or three times from 1936 to 1941, and of a number of other witnesses who saw and talked with her every day during the time she lived with the DeMarco family and after she left there. All of these witnesses testified that in their opinion the testatrix was of sound mind.

Dr. Thiell, Ann Anderson and the attorney further testified that the testatrix was able to transact the ordinary business affairs of life, but the other witnesses not being interrogated on this point expressed no opinion in regard to the ability of testatrix to transact the ordinary business affairs of life.

Samuel J. Ditto, the attorney, testified that the testatrix was very alive mentally, that she knew who were her heirs, what property she owned and that she knew what she was doing when she instructed him in regard to drawing her will.

We have analyzed this evidence as disclosed by this record, and while that tendered by the appellants seems to be stronger than that of appellee, we are unable to say that in returning the general verdict the jury was not influenced and that the verdict could not have been reasonably affected by the action of the court in submitting to the jurors for their decision the issue of undue influence.

It is urged by appellants that the court erred in admitting in evidence (a) the signature card of C. T. Bohen for an individual checking account, which was opened December 19, 1942, with an initial deposit of $515, (b) the signature card for the checking account of the Dutch Mill Tavern, C. T. Bohen, manager, dated April 11, 1936, and (c) the inventory filed in the administration of the estate of Susan Bohen, deceased.

They further complain that the court erred in permitting the witness Marie Anderson to testify to declara-

tions of testamentary intention made by the testatrix without limiting the admission of such evidence to the issue of testamentary capacity, and erred in permitting the witnesses Albert DeMarco, Rosemary DeMarco and Marie Anderson to testify that in their opinion the testatrix lacked sufficient mental capacity to transact ordinary business when there was no evidence that they had ever transacted any business with her or had ever discussed business matters with her.

The two signature cards could throw no possible light upon the matters here in controversy and should not have been admitted. The inventory also is neither relevant nor pertinent to the issues in the case. Counsel stated in the court below that the purpose in putting it in evidence was to show the trust and confidence which the testatrix reposed in her son by showing that he made no accounting for any moneys from the tavern business. This is not a suit for an accounting. If the defendant Clement Bohen, has in his possession assets belonging to the estate of his mother for which he, as her executor, has failed to account, his failure to account for such assets, whether the same came into his possession prior or subsequent to her death, would not, in any way, be evidence tending to prove that he was instrumental in procuring the execution of the will. Undue influence which will void a proved will must be directly connected with the execution of the instrument itself. (*Smith* v. *Peters,* 398 Ill. 108.) It must operate at the time the will is made, must be directed toward the procuring of the will in favor of certain parties and must destroy the freedom of the testator's action and render the instrument more the will of another than his own. *Tidholm* v. *Tidholm,* 397 Ill. 363.

It is next contended that the trial court erred in permitting the witness Marie Anderson to testify to declarations of testamentary intention made by the testatrix, without limiting the admission of such evidence to the

issue of testamentary capacity. Declarations of a testator made either before or after the execution of an alleged will, as to his testamentary intentions, are competent only on the issue of testamentary capacity. (*Knudson* v. *Knudson*, 382 Ill. 492.) The contention in this court is that such testimony was not limited to the issue of testamentary capacity, but was erroneously admitted for all purposes. The objection in the trial court was that the testatrix's declarations of testamentary intention, proof of which was sought to be introduced, were made prior to the execution of the will. No objection was made in the trial court that such testimony was not competent on the issue of undue influence and that it should be limited to the issue of testamentary capacity, and for that reason the appellants are not in a position to urge such objection in this court for the first time. The rule is that if evidence objected to is competent for any purpose, the party objecting must call the attention of the court specifically to any limitations which he believes should be imposed upon its application to the issues. The trial court is entitled to know what specific insufficiencies exist in the introduction of evidence, and it is unfair to make objections on appeal after concealing the real objections from the lower court. (*People* v. *McCurrie*, 337 Ill. 290.) The rule is that a party objecting to evidence must point out the objections specifically so as to afford the adverse party an opportunity to correct it. (*Illinois Iowa Power Co.* v. *Rhein*, 369 Ill. 584.) A party who seeks to exclude a piece of evidence should be explicit and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal. *Forest Preserve Dist.* v. *Lehmann Estate, Inc.* 388 Ill. 416.

It is urged by appellants that the trial court erred in permitting witnesses who had never transacted any business with the testatrix or discussed business matters with her to testify that, in their opinion, she lacked sufficient

mental capacity to transact ordinary business. Appellants object further on the ground that the ability to transact ordinary business is not the test of testamentary capacity. The lay witnesses in this case talked with the testatrix on numerous occasions and had ample opportunity to observe her. The rule is that a person who is not an expert may give his opinion concerning the mental capacity of a testator if it appears that such witness has an acquaintance with the person whose competency is in question, and the witness relates facts and circumstances which afford reasonable ground for determining the soundness or unsoundness of mind of such person, (*Ergang* v. *Anderson*, 378 Ill. 312; *Ginsberg* v. *Ginsberg*, 361 Ill. 499; *Lewis* v. *Deamude*, 376 Ill. 219,) and the jury may give such value to the opinion so expressed as the capacity, intelligence and observation of the witness who forms it may warrant. The question whether the facts stated form a sufficient basis for such an opinion is one for the trial court to determine, and unless that court has abused its discretion the admission of such testimony will not effect a reversal of the decree, for an opinion not based upon sufficient knowledge is of little probative force. *Ergang* v. *Anderson*, 378 Ill. 312; *Down* v. *Comstock*, 318 Ill. 445; *Speirer* v. *Curtis*, 312 Ill. 152.

We are of the opinion the *Ginsberg case*, relied upon by appellants, does no more than re-enunciate the rule announced in former decisions, (*Baddeley* v. *Watkins*, 293 Ill. 394; *Britt* v. *Darnell*, 315 Ill. 385,) and consistently adhered to thereafter. (*Lewis* v. *Deamude*, 376 Ill. 219; *Peters* v. *Peters*, 376 Ill. 237; *Ergang* v. *Anderson*, 378 Ill. 312.) We cannot say under this record that the court has abused its discretion.

It is next contended that the court erred in giving plaintiff's instruction 3 as follows: "The Court instructs the jury that in deciding the issues in this case, you may take into consideration all of the facts and circumstances

in evidence in this case, including the provisions of the purported will in question, their propriety or impropriety, their reasonableness or unreasonableness in view of the situations, relations and circumstances of said Susan Bohen as shown to exist by a preponderance of the evidence."

This instruction was made applicable to the jury's decision of the issues in the case. By it the jury was instructed, in deciding whether the will of the testatrix was obtained through the undue influence of the beneficiaries thereof, to take into consideration the fact that the testatrix had by said will completely disinherited one of her daughters and given her property to her other children, and to also take into consideration the propriety or impropriety and the reasonableness or unreasonableness of such action on her part. Inasmuch as the jury should not have been permitted to consider or decide the issue of undue influence, this instruction was improperly given and tended to mislead and confuse the jury. However, if the issue of undue influence had been withdrawn from the consideration of the jury, the instruction would not, when taken in connection with the other instructions given, be considered as erroneous. (*Ergang* v. *Anderson,* 378 Ill. 312.) The instructions given in a case are to be read and considered as a series. (*People* v. *Gibson,* 385 Ill. 371.) The second instruction given for the plaintiff so advised the jury and directed the jurors to apply the instructions as a whole to the facts and not detach or separate any one instruction from any or either of the others.

Defendants' given instruction 15 told the jury that the law gives to every person of sound mind and legal age the right to dispose of his or her property by will as he or she may desire and in a manner different from that in which it would be distributed if such person should die intestate. The jury was also told by defendants' instruction 21 that the question whether a just, wise and proper disposition of the property of the testator had been made by her was not

a question to be determined by it, and, further, that it is the law that the owner of property, if she has sufficient mental capacity to make a will, has the lawful right to dispose of her property as she may choose, and that such disposition of the property is valid whether it appears to be just or unjust and even though it is not satisfactory to some of her relatives or even if it is injudicious or unwise.

When plaintiff's instruction 3 is considered with reference to her instruction 2 and ·defendants' instructions 15 and 21, it is not subject to the objection made by defendants that its tendency was to cause the jury to believe that it had a right to decide whether the will is just or unjust, proper or improper, or reasonable or unreasonable.

It is also urged that the court erred in giving plaintiff's instruction 14, which is as follows: "The Court instructs the jury that if you believe from the evidence in this case that Susan·Bohen, at the time of the execution of the will, was so diseased mentally that she was incapable, by reason of mental weakness caused by disease, or age, or other derangement, of acting rationally in the ordinary affairs of life, and of intelligently comprehending the disposition she was making of her property and the nature and effect of the provisions of said alleged will, then you should find that the writing produced is not the will of Susan Bohen, deceased."

Appellants contend that this instruction outlines a test of testatmentary capacity beyond that required by law for the reason that the capacity to transact ordinary business of life is a higher test. than the law requires for the ability to execute a will. While a witness may be asked as to the ability of the testator to transact ordinary business, it has often been held by this court that the ability to transact ordinary business is not the true test of testamentary capacity, but is a higher standard than the law requires. (*Speirer* v. *Curtis,* 312 Ill. 152.) Testamentary capacity has frequently been defined as meaning that the·

testator must be able to understand the business in which he is engaged when making his will and to appreciate the effect of the disposition made by him of his property and that if, when making his will, he knows the natural objects of his bounty, the property he owns and the disposition he wishes to make of it, he is possessed of testamentary capacity. *Buerger* v. *Buerger,* 317 Ill. 401; *Speirer* v. *Curtis,* 312 Ill. 152.

Plaintiff's instruction 14 in this case is substantially identical in language with instruction 11 in the case of *England* v. *Fawbush,* 204 Ill. 384. In view of what was there said, and, in addition, defendants' instruction 16, which told the jury that "the true test of testamentary capacity required to make a will is not that a person making the will shall have sufficient capacity and ability to transact all of his or her ordinary business affairs, but the true test is, is there sufficient mental capacity on the part of the one making the will and sufficient soundness of mind and memory to know and understand the nature of his act in making such will, the nature and extent of his property, who are the natural objects of his bounty and the disposition which he thereby makes of his property," and also instruction 17, which told the jury what constitutes a sound and disposing mind and memory, we are not of the opinion that the jury could have misconstrued or misunderstood plaintiff's instruction 14 as laying down an incorrect rule for testamentary capacity.

We have gone over this record carefully and are of the opinion the trial court erred in refusing to take from the jury the issue of undue influence. In view of the fact, as we have hereinabove pointed out, that it cannot be determined from the record whether the effect of such error misled the jury and affected its verdict, the decree of the circuit court of Winnebago County is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*