(No. 31635.—

WALTER MEYER, Appellant, *vs.* CLETUS GERMAN, Admr., *et al.,* Appellees.

*Opinion filed November 27, 1950.*

PAUL R. DURR, of Hardin, and EMERSON BAETZ, of Alton, for appellant.

SCHIMMEL & SCHIMMEL, of Pittsfield, and J. CLARK ANDERSON, and WILLIAM M. COX, guardian *ad litem,* both of Hardin, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

Walter Meyer, the plaintiff-appellant, who will be hereinafter referred to as plaintiff, appeals from a decree of the circuit court of Calhoun County which upheld the validity of the last will and testament of Katie Meyer, deceased, the plaintiff's mother, against his contention that she lacked mental capacity at the time of execution of said will. Plaintiff is the only child and sole heir-at-law of the deceased.

The plaintiff filed his complaint in the circuit court contesting the validity of his mother's will. The complaint as amended set forth five grounds for setting aside the will, as follows: (1) That the will was not signed by the deceased or at her direction as required by statute; (2) that the will was not attested by two witnesses or in the manner provided by statute; (3) that the decedent was of unsound mind and memory at the time of executing the will; (4) that the decedent was subjected to undue influence; and (5) that the decedent did not request the witnesses to sign the will as attesting witnesses and that she did not sign the will in their presence or acknowledge to them that she had signed it.

Answers were filed denying these allegations. The matter was tried before a jury and, at the conclusion of the plaintiff's case, the court withdrew the issue of undue influence from the jury. No error is assigned as to the

action of the court in this regard. Likewise, plaintiff admits in his brief that there was no evidence to sustain his allegations regarding the execution of the will or its attestation. The sole issue which went to the jury was the testatmentary capacity of the decedent. The jury, after deliberation, returned a verdict in favor of the proponents of the will.

The will of Katie Meyer appears to have been executed on June 28, 1948, and, after the usual preliminary provisions, provided as follows:

"First, It is my will that my funeral expenses and my just debts be fully paid.

"Second: I give and bequeath to my beloved sister, Tillie Sibley, the sum of Five Hundred Dollars in cash; also all my Real Estate situated in the Village of Kampsville, together with all the furniture and fixtures contained therein, provided that she, the said Tillie Sibley, pay my funeral expenses.

"Third: I give and bequeath to my beloved Grandchild, John Albert Meyer, the sum of One Thousand Dollars.

"Fourth: I give and bequeath to my beloved Grandchild, Walter Jerome Meyer, the sum of One Thousand Dollars.

"Fifth: I give and bequeath to St. John's Lutheran Church, Kampsville, Illinois, the sum of One Thousand Dollars.

"Sixth: I give and bequeath to St. Anselm's Catholic Church, Kampsville, Illinois, the sum of Fifteen Hundred Dollars, in memory of my beloved son, Albert Meyer.

"Seventh: I give and bequeath to my beloved cousin, Barbara Brunjes, the sum of Five Hundred Dollars.

"Eight: I give, bequeath and devise to my beloved son, Walter Meyer, all of my remaining property of every kind and description, and it is my wish that said Walter Meyer erect a foot stone at my grave.

"Lastly: I hereby nominate and appoint Walter Meyer to be the Executor of this My Last Will and Testament, hereby revoking all former Wills by me made.

"In Witness Whereof, I have hereunto set my hand and seal the 28th day of June in the year of our Lord One Thousand Nine Hundred Forty Eight.

KATIE MEYER (Seal)"

It appears from the evidence that Katie Meyer was about 56 years of age at the time she executed this will and that prior to the execution thereof she had lived with

her son, Walter, the plaintiff, on a farm, the legal title being owned ⁵⁄₉ by Mrs. Meyer and ⁴⁄₉ by Walter Meyer, until the latter part of May, 1948, when she moved to Kampsville, Illinois, in a house which she had purchased. Mrs. Meyer's husband had died previously and her only other son was killed in World War II. It appears that she had suffered considerable emotional distress by reason of this son's untimely death. From the evidence produced by the administrator with will annexed, it appears that she owned personal property worth approximately $5600, the house in Kampsville where she resided and an undivided ⁵⁄₉-interest in 160 acres of land.

The plaintiff called eight witnesses and the proponents called sixteen witnesses. In rebuttal the plaintiff and his wife offered to testify but were precluded by objections as to their competency, and they called two other witnesses.

Dr. Dailey, a physician who attended Mrs. Meyer during her last illness, testified for the plaintiff that he was first consulted by Mrs. Meyer on March 15, 1948, and that he diagnosed her trouble as post-menopausal depression which he characterized as moderate. He testified that he treated her until June 9, 1948, at which time he determined that she was suffering from another disease, namely cancer, from which she died on August 18, 1948, and that she was operated on in the hospital on July 16, 1948, for relief of a gall-bladder condition, and at that time cancer was observed and that the patient was not advised of the cancer. He testified that he saw Mrs. Meyer on June 26 and July 7 and that on those occasions she was depressed but that her depression did not affect her mental condition or her ability to transact business. He likewise stated that he believed her mind to be sound on June 28, 1948. The surgeon who performed the operation was called by the proponents and testified that he first saw Mrs. Meyer on July 2, 1948, and that he operated upon her on July 16, 1948, and stated that she made arrangements with him

to pay his bill and that at no time when she saw him did she show any abnormal mental state. He likewise stated that there was no doubt but that Mrs. Meyer had mental capacity to transact business on July 2, 1948, and that she was perfectly coherent and that her condition would be the same on June 28, 1948. Of all the witnesses called by plaintiff only one testified that he regarded Mrs. Meyer as mentally sick, and another testified that Mrs. Meyer was in a depressed and heart-broken condition. All other witnesses both for the plaintiff and for the proponents testified indicating that Mrs. Meyer was of sound mind.

The only errors assigned for reversal by the plaintiff are with reference to the instructions. He first contends that the giving of 20 instructions was error when but one issue was involved. He next contends that the court erred in giving 13 instructions at the request of the proponents, compared with only 7 at the request of the plaintiff. He next contends that certain instructions were prejudicially repetitive and then he alleges that the giving and modifying of certain instructions was erroneous.

We have carefully reviewed the record and the testimony of the various witnesses, and it appears that the verdict of the jury is certainly not contrary to the manifest weight of the evidence. We cannot see how, upon a retrial of this case with the same evidence being presented, any different result could occur irrespective of any possible error in any instructions.

It appears that only eight instructions were tendered by the plaintiff and seven were given exactly as tendered or after slight modifications, and one was refused. The court gave 10 instructions as tendered by the defendants and modified one other instruction so tendered. The other instructions appear to have been given by the court.

We have reviewed each of the instructions and considered the arguments made by the plaintiff with reference to them. It would serve no useful purpose in prolonging this

opinion to set forth the various instructions complained of. It appears that the cases cited by the plaintiff in support of his argument that the number of instructions was too great, and that they were unduly repetitious, are negligence and slander cases, and none of them involve a will-contest case. Likewise the total number of instructions given in those cases was numerically much greater than the instructions given in this case. Likewise, in those cases there was considerably more dispute and conflict in the testimony than in the case at bar. Plaintiff contends that the court unduly repeated that the law presumed that a person who has arrived at years of discretion is of sound mind and memory and capable of disposing of his property in any manner he chooses until the contrary is shown. It is true that at least five instructions had reference to this rule of law but it does not appear to us that the number was particularly excessive for a case of this type. Certainly, a jury should be admonished very carefully and particularly on this subject and charged to follow the presumption unless the contrary was proved. People are normally sympathetic toward an only child who is displeased with his parent's will and, since the deceased person cannot speak and it is often impossible for the proponents of a will to produce testimony showing exactly the intention and reason for certain provisions in a will, we believe that any court is justified in protecting the intent of the testator by directing attention specifically and in such manner as will eliminate any doubt about the presumption of the law with reference to the testamentary capacity and with reference to the right of a person to give his property to whomsoever he may choose.

We have carefully considered the arguments of the plaintiff with reference to the instructions and we cannot see how he has been in any way prejudiced by the giving of any certain instructions nor that any of said instructions appear to be erroneous. The instructions are not to be taken as individual recitals of the law, but as a series.

(*People* v. *Gibson,* 385 Ill. 371, *DeMarco* v. *McGill,* 402 Ill. 46.) A case which has been fairly tried, and where the appellant has not been prejudiced by the giving of any instruction, should not be reversed because of some technical nicety in argument conjured in the minds of counsel for the appellant.

Plaintiff had a fair trial, the decree is not contrary to the manifest weight of the evidence, and we cannot see how, on a new trial, a jury could bring in any other verdict from the evidence presented. The jury could not have been misled by any possible error in the instructions and the errors assigned are without merit. We, therefore, affirm the decree of the circuit court of Calhoun County.

*Decree affirmed.*